UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EDMUNDO CALDERON,

                Plaintiff,

   -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 08-CV-0045 (FB)

*Appearances*:
*For the Plaintiff*:
RICHARD P. MORRIS, ESQ.
Klein, Wagner & Morris
277 Broadway
New York, New York 10007

*For the Defendant*:
BENTON J. CAMPBELL, ESQ.
United States Attorney
Eastern District of New York
By: EDWARD K. NEWMAN, ESQ.
    Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Edmundo Calderon ("Calderon") seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for disability insurance

benefits ("DIB"). For the following reasons, the case is remanded solely for the calculation of

benefits.

**I**

Calderon first applied for DIB in 1993, alleging that severe pain in his shoulders,

arms and hands prevented him from continuing to work as a jeweler. Over the ensuing years, he

received three adverse decisions from administrative law judges (ALJs); the pertinent aspects of

those prior proceedings are summarized as follows:

**A. 1995 Decision**

The first decision was issued by ALJ Marilyn Hoppenfeld ("Hoppenfeld") on February 24, 1995. At step four of the familiar five-step evaluation process, Hoppenfeld found that Calderon could not perform his prior work due to limitations in his ability to "us[e] his hands for fine manipulations." AR at 296.[1] At step five, however, she concluded that Calderon could still perform other jobs in the national economy and, accordingly, found him not disabled.

On review, the Commissioner's Appeals Council vacated the decision on the ground that the list of other jobs relied on by Hoppenfeld had not been provided to Calderon's counsel in advance of the hearing. For reasons that do not appear in the record, the case was reassigned from Hoppenfeld to ALJ David Nisnewitz ("Nisnewitz").

**B. 1996 Decision**

Pursuant to the Appeals Council's remand, Nisnewitz held an evidentiary hearing at which Calderon's counsel was allowed to question a vocational expert ("VE") regarding the list of jobs relied on by Hoppenfeld.[2] On October 19, 1996, Nisnewitz issued a decision finding that Calderon was incapable of performing his prior work; like Hoppenfeld, Nisnewitz based his finding on evidence showing that Calderon was unable to perform "repetitive fine manipulation." AR at 25. Nisnewitz ultimately agreed with Hoppenfeld's conclusion, however, that Calderon could perform other jobs in the national economy. This time, the Appeal Council denied review.

Calderon thereupon sought judicial review in this Court. On February 23, 2000, the Court issued a memorandum and order ("M&O") vacating the Commissioner's decision. *See*

---

[1]"AR" refers to the transcript of administrative proceedings.

[2]The VE who had originally prepared the list was no longer working as an expert at the time of the 1996 hearing. Calderon's counsel raised no objection to the use of a substitute VE.

*Calderon v. Apfel*, Case No. 98-CV-5302, at 7 (E.D.N.Y. Feb. 23, 2000).[3] The Court concluded that

Nisnewitz did not have to give controlling weight to Calderon's treating physician in assessing

whether Calderon could perform other jobs in the national economy, but that he had failed to follow

the Commissioner's regulations requiring him to describe and justify "what weight [the treating

physician's] opinion should be given if not controlling." *Id.* at 6; *see Schaal v. Apfel*, 134 F.3d 496,

503-04 (2d Cir. 1998) ("[The] Regulations provide that the Commissioner 'will always give good

reasons in our notice of determination or decision for the weight we give [claimant's] treating

source's opinion.'" (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2))). The Court remanded

to the Commissioner "for further proceedings consistent with this Memorandum and Order." M&O

at 7. The Appeals Council, in turn, remanded to Nisnewitz.

## C. 2006 Decision

On March 13, 2006, Nisnewitz convened an evidentiary hearing, at which Dr. Louis

Lombardi ("Lombardi") testified as a medical expert. Lombardi testified that Calderon would have

"some difficulty" with gross manipulation, but that he "could do fine manipulation as far as

[Lombardi could] see." AR at 508-09. A vocational expert testified that such a person could

perform Calderon's prior work.

On August 17, 2006, Nisnewitz issued a decision finding Calderon not disabled.

Unlike Hoppenfeld's decision and his own prior decision, the 2006 decision did not rely on

Calderon's ability to do other work; instead, Nisnewitz found, based on Lombardi's testimony, that

Calderon had no limitation in fine manipulation and, therefore, could perform his past work as a

jeweler. In short, Nisnewitz disavowed his prior step-four determination, thereby obviating the need

to address the step-five error identified in the Court's 2000 M&O. He offered no explanation for

---

[3]A copy of the Court's decision is included in the administrative record at pages 368 to 374.

the change. When the Appeals Council denied review on November 17, 2007, Nisnewitz's decision became the final decision of the Commissioner. Calderon again sought judicial review.

**II**

Calderon contends that Nisnewitz (1) exceeded the scope of this Court's mandate and failed to follow "the law of the case" in finding that Calderon could return to his past relevant work as a jeweler; (2) erred in finding that Calderon could return to his past relevant work as a jeweler; and (3) erred in finding that Calderon's testimony concerning the intensity of his symptoms was not entirely credible. For reasons that will become apparent, the Court need address only the first issue.

"The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Under a related doctrine, "the power of a trial court to act in any litigation after the issuance of a mandate on appeal is limited by an obligation to do nothing contrary to either the letter or the spirit of the mandate, as explained or elucidated by the opinion." *Goldwyn Pictures Corp. v. Howell Sales Co.*, 287 F. 100, 102 (2d Cir. 1923). The Ninth Circuit has explained the interplay between the two doctrines thus: "When acting under an appellate court's mandate, an inferior court is bound by the decree as the law of the case." *Vizcaino v. United States District Court*, 173 F.3d 713, 719 (9th Cir. 1999). Although the Second Circuit has not addressed the question, numerous other courts have held that these doctrines apply with equal force to administrative proceedings, including Social Security appeals. *See Grigsby v. Barnhart* 294 F.3d 1215 (10th Cir. 2002); *Brachtel v. Apfel*, 132 F.3d 417 (8th Cir. 1997); *Key v. Sullivan*, 925 F.2d 1056 (7th Cir. 1991); *Ischay v. Barnhart*, 383 F. Supp. 2d 1199 (C.D. Cal. 2005)

(citing *Holst v. Bowen*, 637 F. Supp. 145 (E.D. Wash 1986)); *Carrillo v. Heckler*, 599 F. Supp. 1164 (S.D.N.Y. 1984).

Had the Court expressly affirmed Nisnewitz's 1996 determination that Calderon could not perform his past work, his unexplained about-face in 2006 would plainly have violated the doctrine of law of the case. As the Southern District has explained, however, the doctrine does not depend on an explicit determination: " T h i s princip le [of law of t h e c a s e] applies to all matters decided b y necess a r y implic ation as well as t h o s e addres

sed directly." *Carrillo*, 599 F. Supp. at 1168 (S.D.N.Y. 1984); *accord Ischay*, 383 F. Supp. 2d at 1217 ("The doctrine does not require that

6

any

issue

actuall

y have

been

adjudic

ated;

rather,

it

applies

to this

Court's

explicit

decisio

ns as

well as

those

issues

decided

by

necess

ary

implic

ation." (citation and internal quotation marks omitted)). The point is particularly important in Social Security appeals because a district court is

never

called

upon to

address

issues

resolve

d in the

claima

n t ' s

favor;

t h e

claima

n      t

obviou

s  l  y

cannot

challen

ge such

determ

ination

s,   and

t  h  e

Comm

issioner cannot challenge them because they were made by him (or his delegate) in the first place. As Judge Keenan recognized in *Carrillo*, it

follows from this procedural anomaly that when a district court passes judgment on, for example, an ALJ's step-five determination, it has implici

t l y

affirme

d the

determ

ination

s at all

p r i o r

steps:

> It is immaterial that the ALJ's finding regarding the severity of the impairment [i.e., step two] was not challenged on appeal to the district court. If the evidence had been insufficient to support a finding that the impairment was severe the court would not have remanded the action to the ALJ for consideration of whether plaintiff could return to her prior work [i.e., step four], but rather would have affirmed the ALJ's decision and treated the failure to properly consider whether plaintiff could return to work as harmless error.

599 F. Supp. at 1169.

The logic of *Carrillo* applies here. Had it been clear from the record in 2000 that Calderon could return to his prior work, Nisnewitz's step-five error would have been an irrelevancy. To reverse based on that error, therefore, the Court necessarily reached the conclusion – albeit *sub silentio* – that Nisnewitz's step-four determination in favor of Calderon was supported by substantial evidence. At that point, that determination became the law of the case and could not be changed on remand absent "cogent" and "compelling" reasons. *Ali*, 529 F.3d at 490 (2d Cir. 2008). As no such reasons appear, Nisnewitz's 2006 decision was error.

The Commissioner argues that his internal operating procedures required Nisnewitz to redetermine all issues on remand. Those procedures, however, state only that the ALJ "must consider all *pertinent* issues *de novo*." See Soc. Sec. Admin., Hearings, Appeals & Litig. Law

12

Manual ("HALLEX") at § I-2-8-18 (2008) (emphasis on "pertinent" added). That the Appeals

Council can and does limit the "pertinent" issues to those identified by the district court is confirmed

by its remand order here, which "remand[ed] the case to an Administrative Law Judge for further

proceedings consistent with the order of the court." A.R. at 375; *see also* 20 C.F.R. § 404.977(b)

("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any

additional action that is not inconsistent with the Appeals Council's remand order.").

        In some cases, a district court's remand may implicitly authorize the ALJ to

reconsider issues not raised on appeal. For example, a remand to develop the record will require the

ALJ to take additional medical evidence, which may, in turn, require reassessment of the ALJ's prior

determinations as to the nature and severity of the claimant's impairments, or the limitations such

impairments impose. Here, however, the Court's mandate was merely to correct a procedural error

in Nisnewitz's step-five determination; it was not an invitation to revisit the 1996 decision in its

entirety.

## III

        Having determined that Nisnewitz erred in reconsidering his 1996 step-four

determination, the Court must next determine the appropriate remedy for the error. In that regard,

it is guided by the Second Circuit's summary of available remedies in *Butts v. Barnhart*, 388 F.3d

377 (2d Cir. 2004):

> In deciding whether a remand is the proper remedy, we have stated
> that where the administrative record contains gaps, remand to the
> Commissioner for further development of the evidence is appropriate.
> That is, when further findings would so plainly help to assure the
> proper disposition of the claim, we believe that remand is particularly
> appropriate. On the other hand, where this Court has had no apparent
> basis to conclude that a more complete record might support the
> Commissioner's decision, we have opted simply to remand for a
> calculation of benefits.

*Id.* at 385-86 (citations, internal quotation marks and alterations omitted).

To be sure, a remand for further proceedings would allow Nisnewitz to rectify the error the Court first identified ten years ago. The Court is mindful, however, that the error related to step five of the sequential evaluation process. Although the claimant bears the burden of proof on the first four steps, "at step five, the disability has been shown, and the burden shifts to the Commissioner to prove that the claimant is capable of working." *Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005) (opinion on (rehearing) (citations, internal quotation marks and alterations omitted).

In *Butts*, the Second Circuit recognized the importance of the shift in the burden of proof on the appropriate remedy. Although the circuit court approved the district court's decision to remand for further proceedings to allow the Commissioner a "second chance to present evidence" to correct a step-five error, 416 F.3d at 104, it noted that "on the present record, the ordering of a benefits calculation was hardly out of the question [because] it was well within the power of the Commissioner to fashion procedures that would have ensured that she sought to carry her fifth-stage burden on the first occasion that it fell upon her." *Id.* The court further warned that remand for calculation of benefits would be the appropriate remedy if the Commissioner failed to avail herself of its magnanimity: "We do no more than grant [the Commissioner] the requested second chance with notice that the record will be deemed closed according to the temporal limits stated in this opinion. If the record is closed without such testimony, Butts will then be entitled to benefits." *Id.*

The Court gave Nisnewitz an opportunity to correct his step-five error nearly 10 years ago. Instead, he disregarded the Court's mandate and changed his step-four determination, a tactic that at least suggests an improper attempt to justify, by whatever means necessary, a preordained

conclusion that Calderon was not disabled.  For these reasons, the Court concludes that remand for the calculation of benefits is warranted.

**IV**

The Commissioner's final decision is vacated.  The case is remanded solely for the calculation of benefits.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 26, 2010